## Commonwealth v. Harsch

*Rudolph Van der Hiel,* District Attorney, for Commonwealth.
*Larry Linder,* for defendant.

KEMP, *P. J.,* December 23, 1975—

## HISTORY OF THE CASE

Defendant was charged with a violation of section 704 of the Game Law of June 3, 1937, P.L. 1225, as amended, 34 PS §1311.704, specifically the use of bait to attract deer. The case was heard on March 27, 1975, before District Magistrate William A. Buckingham, of Elkland, who convicted defendant and imposed a fine of $200., pursuant to section 731 of the Game Law of 1937, as amended, 34 PS §1311.731. An appeal was taken by defendant from his summary conviction, and we heard testimony de novo on October 22, 1975. From that testimony, we find the following:

## FACTS

Before dawn on December 2, 1974, the first day of deer season in that year, District Game Protector John K. Weaver and Deputy Game Protector William Fry took up positions on a wooded hillside in Lawrence Township. They observed the movement of flashlights on the hillside above them, as deer hunters took up their respective positions on the hill. After the season opened and day began to break, the first hunter observed by Mr. Weaver was one William Harsch, Jr., the son of defendant. While talking to the younger

Harsch, Mr. Weaver heard a gun shot to his left and heard some person shout something to the effect that a deer was coming down toward whomever he was addressing. Mr. Weaver proceeded in a direction toward the sound of the gun shot and discovered defendant following the track of a deer. He took from defendant a rifle containing in its chamber a 244 Remington shell. Defendant said at that time that he had shot at a deer. Mr. Weaver and defendant backtracked to a pile of various fruits and vegetables lying in the snow, from which Mr. Weaver could see defendant's tracks leading'back to a tree under which was an empty overturned fruit basket. On proceeding to the tree, Mr. Weaver picked up a spent 244 Remington cartridge, which had melted a short distance into the snow.

Mr. Weaver observed the tracks of one deer leading to the pile of fruit and vegetables, veering off away from the tree where defendant had been standing or sitting on the fruit basket, and leading to where he first had encountered defendant. At the point where the tracks veered, Mr. Weaver observed that the deer had jumped sideways, and in the same area there was blood in the snow.

The pile of fruit and vegetables near which the deer had been shot was approximately 35 yards from the tree where defendant had been standing. Both Mr. Weaver and Mr. Fry observed pieces of lettuce, squash, apples and oranges. Mr. Weaver testified that there were four such piles, three of which were located at, or very close to, a jeep trail leading into the area where defendant had been standing near a tree. Each pile protruded about a foot above the ground, which was covered with one or two inches of fresh snow. At a distance of

35 to 40 feet from defendant in a direction away from the piles of fruit was a basket of corn hanging from a tree. The game protector testified that each pile of fruit and the basket of corn was in a clear line of fire from where defendant stood at the tree.

The defense testimony was presented by defendant, his son and a tenant of defendant who lives on the same property where defendant was arrested. Defendant owns and operates a produce business and uses his property in Lawrence Township for the disposal of about 50 percent of the unsaleable fruit and vegetables from his business. This is done throughout the year, and the testimony revealed that a load of such unsaleable produce had been discarded at this location a day or two before the opening of deer season, either late in November or early in December 1974. Both defendant and his son disclaimed knowledge of the origin of the corn which was hanging in the basket from a tree.

### ISSUE

Because the material facts in this case are entirely undisputed, the issue is one of law: whether the act of defendant, in shooting at a deer which had come to a pile of produce discarded by defendant, falls under the prohibition of section 704 of the Game Law of 1937, which sets forth a general prohibition against the use of bait to attract game animals, except as permitted elsewhere in the Game Law or in regulations promulgated pursuant to it.

### DISCUSSION

The statute which defendant is alleged to have violated reads, in pertinent part, as follows:

"Sec. 1311.704 Unlawful methods of hunting; Unlawful Methods and Devices

"(a). . .

"Except as otherwise provided, it is unlawful to hunt for, catch, take, kill or wound, or attempt to catch, take, kill or wound any wild bird or wild animal of any kind . . . (d) or to set, lay or prepare for use or to use any bait, hay, grain, or other food, . . . (f) or to make use of any method or device not specifically permitted by this act, for the purpose of catching, taking, wounding or killing wild birds or wild animals": Game Law of 1937, as amended, 34 PS §1311.704(a).

This enactment obviously prohibits the use of bait of any kind other than that specifically allowed in other sections of the Game Law, or by the regulations promulgated pursuant thereto by the Pennsylvania Game Commission.

In light of the language of the statute, the issue, as expressed above, resolves itself into a consideration of (1) the status of the produce discarded by defendant on his lot, and (2) the use made of that produce by defendant after discarding it. If the produce constitutes bait after being discarded, and if defendant intended to take advantage of the placement of that bait in his pursuit of the elusive buck, then defendant clearly is guilty of a violation of the above-quoted section of the Game Law.

The statute prohibits the placement, preparation or use of "any bait, hay, grain, or other food," in the hunting of wild birds or animals. Defense counsel argues that the word "bait" means something offered to entice, and that placement of the discarded produce by defendant was not done for the purpose of enticing. We are urged thus to de-

termine the intent of defendant in discarding his unsaleable produce in Lawrence Township. Defense counsel also argues that the word "food" as used in the statute should be construed to mean food fit for human consumption, which obviously would not include the discarded produce. We believe that the use of the word in this statute means any comestible which a wild bird or animal reasonably would be expected to eat, including, but not limited to, its natural foods in the native state.

The argument about the meaning of the word "bait," and the element of intent which is inherent in the use of that word by the General Assembly, is not quite so easily resolved. It is easy to conceive of a fact situation, for example, in which no advantage had been taken of the placement of discarded comestibles, where the question of intent would have to be proved by evidence other than the mere fact of the accessibility of such materials to wild animals or birds. This is not such a case; here, defendant clearly took advantage of the fact that the discarded produce was accessible to the deer, and he admitted to having shot at and wounded a deer from his position at the base of the tree from which Mr. Weaver had said he had a clear line of fire toward each pile of produce. From these facts we can infer that defendant intended to use these piles of produce as bait. We believe that our ruling would be the same even if defendant or his agent had not been the party responsible for the placement of the discarded produce; we are not called upon, however, to decide that question.

## CONCLUSION

We hold that the unsaleable fruit and vegeta-

bles discarded by defendant in this case constitute both bait and food within the meaning of section 704 of the Game Law of 1937, and we hold that the act of defendant in taking advantage of the placement of the discarded produce constitutes a violation of that statute. Accordingly, we enter the following:

## ORDER

And now, December 23, 1975, it is ordered, adjudged and decreed that the determination of the guilt of defendant and the imposition of the fine and costs upon him by the district magistrate be, and the same hereby are, affirmed. The appeal of defendant from his summary conviction is hereby dismissed, at the cost of defendant.